UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No.:  8:25-cr-498-JLB-AEP

GEORGE RUSSELL ISBELL, JR.

_____/

### ORDER

On October 3, 2025, George Russell Isbell, Jr. was charged by criminal complaint in the Middle District of Florida of sending a threatening letter through U.S. Mail from San Diego, California, to an individual located in Tampa, Florida. (Doc. 1 at 4–5).  Mr. Isbell was subsequently arrested in San Diego on October 8, 2025.  (Doc. 7).  A detention hearing was held in San Diego on October 10, 2025, before United States Magistrate Judge Steve B. Chu.  (Docs. 5, 17-3).  Judge Chu found—under the factors listed in 18 U.S.C. § 3142(g)—that Mr. Isbell was a danger to the community and ordered him detained pending trial.  (Doc. 17-3 at 24–26).  Judge Chu then facilitated the transfer of Mr. Isbell to the Middle District of Florida.  (Doc. 17-4 at 42).  Mr. Isbell filed a Motion for District Court Review of Judge Chu's Detention Order, arguing that he should be released pending trial. (Doc. 16).  The United States responded.  (Doc. 18).  Upon *de novo* review of the detention hearing transcript, the exhibits entered, and the entire record, the Court finds that Mr. Isbell's Motion (Doc. 16) is **DENIED**.

## PROCEDURAL BACKGROUND

On October 3, 2025, George Russell Isbell, Jr. was charged by criminal complaint with one count of mailing threatening communications in violation of 18 U.S.C. § 876(c). (Doc. 1). A grand jury subsequently returned an Indictment against Mr. Isbell, charging him with one count of mailing threatening communications in violation of 18 U.S.C. § 876(c) and one count of making an interstate threat to injure in violation of 18 U.S.C. § 875(c). Specifically, the United States alleges that, on or about September 25, 2025, Mr. Isbell sent a threatening letter through U.S. Mail from San Diego, California, to an individual in Tampa, Florida. (*Id.* at ¶¶ 6–7). That letter was attached to the criminal complaint filed in this case. (*Id.* at 5).

### I.   The Detention Hearing

On October 10, 2025, United States Magistrate Judge Steve B. Chu held a detention hearing in San Diego. (Docs. 5, 17-3). At that hearing, Judge Chu heard oral argument as to whether Mr. Isbell should be detained or released pending trial. (Doc. 17-3). Each side offered evidence as to whether the factors listed in 18 U.S.C. § 3142(g) weighed in favor of detaining Mr. Isbell. (*Id.*).

Title 18 U.S.C. § 3142 permits a court to hold a hearing and consider certain factors that "will reasonably assure the appearance of the person. . . and the safety of . . . the community. . . ." 18 U.S.C. §§ 3142(g), (f). Those factors include (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (2) the weight of the evidence against that person, (3) the history

and characteristics of the person, and (4) the nature and seriousness of the danger to the community that would be posed by the person's release. *Id.* §§ 3142(g)(1)–(4).

### A. The United States argues for detention pending trial.

During the hearing, the United States argued that Mr. Isbell was a flight risk and a danger to the community. (Doc. 17-3 at 3). The United States argued that the section 3142(g) factors favored detaining Mr. Isbell. (*Id.*). As to the first factor, the United States noted that (1) Mr. Isbell is accused of a crime of violence (*id.* at 3), (2) there are no conditions or combination of conditions that can reasonably prevent him from continuing to send threatening letters (*id.*), (3) the letter included language stating that Mr. Isbell would love to see the alleged victim's head blown off during a public engagement (*id.* at 4), (4) the letter was sent directly to the alleged victim's home, and (5) Mr. Isbell intended to terrorize the alleged victim (*id.* at 9).

The United States argued that the second factor—the weight of the evidence against Mr. Isbell—is particularly strong. (*Id.* at 5). Specifically, it argued that Mr. Isbell's fingerprints were found on the letter, he admitted he sent the letter, and he researched the White Pages to find the alleged victim's address. (*Id.*). The United States presented a second copy of the letter that was sent to the alleged victim, which was found during a search of Mr. Isbell's home. (*Id.*).

As to the third factor, the United States conceded that some personal history and characteristics weighed in Mr. Isbell's favor. (*Id.* at 14). Specifically, the United States stated that Mr. Isbell was a long-term resident of San Diego and that

3

he has a financial stake in the community through his ownership of adult emporium stores. (*Id.*). The United States also conceded that Mr. Isbell has no criminal record of violence or significant criminal history and that there is "some" evidence that he has a willingness to abide by conditions of a potential release. (*Id.*).

The United States argued that the fourth factor—the nature and seriousness of danger to the community—weighed against Mr. Isbell's release pending trial. Specifically, the United States argued that agents found four other threatening letters during the search of Mr. Isbell's residence. (*Id.* at 13–15); (Doc. 22 at 3–6) (sealed). The letters, which were entered into evidence, were drafted, but the United States was unsure if or how many were sent. (Doc. 17-3 at 8). Mr. Isbell admitted to agents that he had sent other letters but he could not remember which ones he sent. (*Id.*).

The first letter included calls for a second civil war, bomb drones or missile drones to silence Mr. Isbell's political opponents, and a claim that "you all must die" (referring to Republicans). (Doc. 22 at 3–4) (sealed). The second letter called for "some serious republican deaths", and a third stated, "When [Civil War II] starts[,] you [and] your family will die first. Signed, Waiting with an AR-15." (*Id.*) (sealed); (Doc. 22 at 5) (sealed); (Doc. 17-3 at 10, 22). The fourth letter, which the United States believed to be intended to be sent to a United States Senator, listed the names of the purported Senator's grandchildren with "dead" written next to their names.[1] (Doc. 22 at 6) (sealed); (Doc. 17-3 at 10, 22). The United States also stated

---

[1] While "dead" was written next to each of their names, the note also referred to terms such as "car accident", "leukemia," and "gun shot". (Doc. 22 at 6) (sealed).

4

that there were more letters addressed to a governor of a state, a U.S. Senator, and other Congressmen. (Doc. 17-3 at 23).

The United States also argued that the fourth factor favored detention because Mr. Isbell failed to disclose to pretrial services a box full of cash that was found at his residence during the search that is "easily. . . over 10 grand" according to agents. (Doc. 17-3 at 15); (Doc. 22 at 2 (sealed)).

In sum, the United States argued that the first, third, and fourth factors weighed heavily in favor of detaining Mr. Isbell pending trial.

**B. Mr. Isbell argues against detention pending trial.**

Mr. Isbell, through his attorney, also presented oral argument at the hearing. (Doc. 17-3 at 15–26). There, Mr. Isbell argued that the first factor—the nature and circumstance of the crime—weighed in favor of release pending trial because the language did not constitute a "true threat." (Doc. 17-3 at 18–19). Specifically, he argued that letter did not demonstrate an intent to hurt the alleged victim because part of the letter stated, "Don't worry—wont be me—I'm not giving up my freedoms for worm [expletive] like you." (*Id.*); (Doc. 1 at 5).

Mr. Isbell did not sufficiently challenge the second factor—the weight of the evidence against him.

As to the third factor—history and characteristics—Mr. Isbell argued that this factor weighs in favor of release pending trial. He stated that he joined the Navy over 50 years ago, served for six years, received an honorable discharge, and has resided in San Diego since then. (Doc. 17-3 at 16). His family also flew in

overnight from Texas to demonstrate that, "This is a family who's very motivated to be here as soon as possible to support [him]." (*Id.* at 22). Thus, he argues that his family history, his 50 years in the San Diego community, and his status as a business owner and employer favor release. (*Id.* at 17).

Mr. Isbell argued that the fourth factor— the nature and seriousness of the danger to the community—weighs in favor of release. Specifically, he argued that the letters were not actually sent and some letters included language saying that "Mr. Isbell is not going to hurt anybody." (Doc. 17-3 at 18). For instance, the letter mailed to the alleged victim stated that it wouldn't be Mr. Isbell hurting the alleged victim and the letters found in his residence did not "articulat[e] a threat of violence. . . ." (Doc. 17-3 at 20–21). Put simply, Mr. Isbell argued that the letters, including the one sent to the alleged victim, are not criminal in nature and are protected by the First Amendment. (*Id.* at 18).

Mr. Isbell also argued that the cash proceeds found at his home were business proceeds from his adult entertainment stores across the San Diego area. (*Id.* at 16). He stated that the businesses are "by their nature, cash businesses." (*Id.*).

Therefore, Mr. Isbell argued that factors one, three, and four favored his release pending trial.

6

### C. U.S. Magistrate Judge Chu detains Mr. Isbell pending trial.

After hearing from both sides, Judge Chu stated, "The question before the Court is whether there are conditions that can be set to reasonably assure [Mr. Isbell's] future appearance at court proceedings here in San Diego and presumably in Florida, in the charging district." (Doc. 17-3 at 24). Judge Chu acknowledged that part of the letter sent to the alleged victim stated that Mr. Isbell disavowed violence. (*Id.* at 24–25). He also acknowledged that there may have been other letters sent, such as the ones entered into evidence, that "follow a similar pattern of again wishing harm upon the recipient and their loved ones, going so far as listing the names of loved ones as well." (*Id.* at 25).

Judge Chu stated that he was concerned about the fear that is instilled from the circumstances of this case and primarily focused on the degree. (*Id.*). He stated, "I think that it is a different case if it is one instance versus multiple instances, and we have multiple instances of letters that were sent, as well as additional letters that may have yet to be sent and also the naming of loved ones and wishing harm upon them." (*Id.*). Based on that, Judge Chu found that the United States met its burden to show that Mr. Isbell was a danger to the community and ordered his detention pending trial. (*Id.* at 25–26).

Judge Chu then facilitated the transfer of Mr. Isbell to the Middle District of Florida. (Doc. 17-4 at 42).

**D. Mr. Isbell moves for reconsideration of Judge Chu's Order.**

Following Mr. Isbell's transfer to the Middle District of Florida, he filed a Motion for District Court Review of Judge Chu's Detention Order and Request for Pretrial Release. (Doc. 16). The core of Mr. Isbell's motion concerns factors previously discussed during the detention hearing.

First, Mr. Isbell argues that (1) due to sentencing guidelines, he should be released because he would likely "receive a bottom of the guideline imprisonment range sentence as is customary in this district. . . ," and (2) his personal and family history, educational history, military service, work history, physical health, mental health, substance use and prior sentences favor release. (*Id.*).

Additionally, he argues that factor two—the weight of the evidence against him—weighs in his favor. (*Id.* at 27–28). In support, he states that "the government always believes the cases it brings are strong." (*Id.* at 27). And he further argues that he is not "a danger whatsoever" because, "Whatever caused him to lash out in this case has now been overwhelmed by the consequences of his actions." (*Id.* at 28).

The United States responded in opposition, adopting its arguments previously made at the detention hearing in San Diego. (Doc. 18 at 3). Put simply, the United States argued, "There has been no change since the time of the detention hearing regarding the danger that [Mr. Isbell] poses to others. . . ." (*Id.*).

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge. . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order" and the court should "promptly" rule on the motion. 18 U.S.C. § 3145(b). "[I]n this situation, the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). This "independent review" is a *de novo* review. *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

The district court has two options when reviewing a challenge to a magistrate's pretrial detention order. *King*, 849 F.2d at 490. "First, based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct." *Id.* "The court may then explicitly adopt the magistrate's pretrial detention order." *Id.* The adoption of the magistrate's order eliminates the need for the district court to prepare its own written findings of fact and statement of reasons supporting pretrial detention, so long as there are no factual issues to resolve. *Id.* And the district court need not enter findings of fact when adopting the magistrate judge's pretrial detention order. *Id.* Moreover, a hearing is not required so long as the district court properly afforded *de novo* review of the magistrate's detention order. *Gaviria*, 828 F.2d at 670.

The second option allows the district court to obtain more evidence if, "after reviewing the detainee's motion, [the court] determines that additional evidence is necessary or that factual issues remain unresolved. *King*, 849 F.2d at 490. The court may then conduct an evidentiary hearing. *Id.* "In this instance, the district court must enter written factual findings and written reasons supporting its decision." *Id.*

"[I]f the district court concludes that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order." *Id.* at 491.

## DISCUSSION

The Court has thoroughly reviewed all materials available to Judge Chu, including the affidavit of agent Steven Thames of the Federal Bureau of Investigation (Doc. 1), the indictment (Doc. 1-1 (sealed)), the letter sent to the alleged victim (Doc. 1 at 5), letters found at Mr. Isbell's residence (Doc. 22 at 1, 3–6 (sealed)), and a photo of the box of cash found at Mr. Isbell's residence (*id.* at 2). The Court has also carefully reviewed the transcript of the detention hearing (Doc. 17-3), Mr. Isbell's Motion for Reconsideration of Judge Chu's Order (Doc. 16), and the United States' response (Doc. 18). After *de novo* review, the Court finds that Judge Chu's factual findings are supported and his legal conclusions were correct. The Court therefore adopts Judge Chu's factual findings and determination that Mr. Isabell shall remain in custody.

"A criminal defendant must be released before trial on personal recognizance or upon execution of an unsecured bond, unless the court determines that release will not reasonably ensure his appearance or will endanger the safety of others." *Taylor v. Pekerol*, 760 F. App'x 647, 653 (11th Cir. 2019) (citing 18 U.S.C. § 3142(b)). That said, a defendant must be detained pending trial if he presents a serious risk of flight or poses a danger to another person or members of the community. *United States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990) (citing 18 U.S.C. §§ 3142(e)–(f)).

The United States must demonstrate by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community. . . ." 18 U.S.C. § 3142(f). "Clear and convincing evidence exists when the evidence induces 'an abiding conviction that the truth of its factual contentions are highly probable.'" *United States v. Ingram*, 415 F. Supp. 3d 1072, 1078 (N.D. Fla. 2019) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). "Accordingly, to show by clear and convincing evidence that a defendant poses a danger to the community, the United States need not prove that there is a 100% chance that a defendant will commit harmful acts. Rather, the concept of danger entails probability of harm and, thus, demonstrating a substantial risk of harm is sufficient." *Id.* (citing *United States v. Shea*, 749 F. Supp. 1162, 1167 (D. Mass. 1990)).

Here, the Court finds that Judge Chu's factual and legal findings are supported and are adopted in full. The United States met its burden during the

detention hearing to demonstrate that there are no conditions or combination of conditions that will reasonably assure the safety of the community if Mr. Isbell were released. While the Court adopts Judge Chu's findings, "[T]he district court is always free to enter its own findings in writing and a written statement of reasons supporting pretrial detention." *See King*, 849 F.2d at 491.

In his motion to revoke the detention order, Mr. Isbell adds a host of new information that would not overcome the findings of Judge Chu, nor would the information require a hearing. First, there is no support for Mr. Isbell's contention that he would likely receive a "customary" bottom of the guideline imprisonment sentence. Second, Mr. Isbell's motion contains a vast amount of information regarding his personal and family history, educational history, military service, work history, physical health, mental health, substance use and lack of prior sentences. The Court understands that this information may, in some cases, help in assessing Mr. Isbell under factor three—the history and characteristics of the person—but it does not overcome the evidence presented during the detention hearing, which demonstrated that Mr. Isbell poses a danger to the community. As correctly held by Judge Chu, this Court agrees that it is one thing if Mr. Isbell's actions are an isolated incident. But the additional letters and graphic language naming and wishing harm upon the loved ones of his political opponents is particularly concerning. Mr. Isbell argues in his motion that, "Whatever caused him to lash out in this case has now been overwhelmed by the consequences of his actions." (Doc. 16 at 28). That argument is unpersuasive, and it does not change

the evidence submitted in the detention hearing nor does it compel this Court to hold a hearing.

Lastly, Mr. Isbell argues that factor two—the weight of the evidence against him—weighs in his favor because "the government always believes the cases it brings are strong." (*Id.* at 27). But the detention hearing transcript demonstrates otherwise. Mr. Isbell did not challenge the United States' proposition that his fingerprints were found on the letter, he admitted he sent the letter, and he researched the White Pages to find the alleged victim's address. (*See* Doc. 17-3 at 5, 15–22). He further did not challenge the authenticity of the letters found at his residence. Instead, he argued that some of the letters were not sent and that the unsent status of the letters was evidence that he is not a danger to the community. The Court is unpersuaded. The Court agrees with the United States' argument that, "There has been no change since the time of the detention hearing regarding the danger that [Mr. Isbell] poses to others. . . ." (Doc. 18 at 3). And the Court agrees that there are no conditions or combination of conditions that will reasonably assure the safety of the community if Mr. Isbell were released.

## CONCLUSION

Defendant's Motion for District Court Review of Judge Chu's Detention Order pursuant to 18 U.S.C. § 3145(b) (Doc. 16) is **DENIED**. Upon *de novo* review of the record, the Court adopts the Magistrate Judge's pretrial detention order in full. (*See* Doc. 17-3).

**IT IS SO ORDERED** in Tampa, Florida, on January 6, 2026.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE