UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA          :
                                  :
                                  :
v.                                :          Case No.: 8:25-CR-498-JLB-AEP
                                  :
                                  :
GEORGE RUSSELL ISBELL, JR         :
_____:

**DEFENDANT GEORGE RUSSELL ISBELL, JR'S**
**MOTION TO DISMISS THE INDICTMENT**
**FOR FAILURE TO ALLEGE THE FIRST AMENDMENT MENS REA**
**REQUIRED BY COUNTERMAN V. COLORADO**

COMES NOW, the Defendant, GEORGE RUSSELL ISBELL, JR, by and through undersigned counsel, respectfully moves the district court to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), on the ground that the indictment fails to allege the constitutionally required mens rea for unprotected true threats, as clarified by the Supreme Court of the United States (hereafter, the Court) in *Counterman v. Colorado*, 143 S. Ct. 2106 (2023).

In *Counterman*, the Court held that the First Amendment requires the government to prove, at minimum, that a defendant consciously disregarded a substantial risk that his communication would be understood as a threat. *Id*. at 2115–2117. Because the indictment here does not allege that the Defendant was aware of, and consciously disregarded, a substantial risk that his statements would

be perceived as threatening, it fails to state an offense consistent with the First Amendment and must be dismissed.

## I.    INTRODUCTION

In *Counterman*, the Court resolved the mens rea necessary to strip speech of First Amendment protection under the true-threats doctrine. *Counterma*n, 143 S. Ct. at 2111, 2115–2117. *Counterman* represents the most current and definitive Supreme Court guidance on true threats doctrine, decided in June 2023. *Id*. The decision resolved a long-standing circuit split regarding mens rea requirements that had persisted since *Elonis* left the recklessness question unresolved in 2015. *Elonis v. United States*, 575 U.S. 723 (2015). Lower courts had been divided on whether objective or subjective standards applied, creating inconsistent enforcement across federal circuits.

In *Counterman*, the Court held that mere negligence is insufficient, and that the First Amendment requires at least recklessness - namely, that the speaker consciously disregarded a substantial risk that his words would be viewed as threatening violence. *Counterma*n, 143 S. Ct. at 2111, 2115–2117.

The indictment in the Defendant's case does not allege that constitutionally required mental state. It either recites only the objective effect of the speech or alleges, at most, negligence as to how the communication would be perceived.

Under *Counterman*, that is not enough. The indictment therefore fails to state an offense and must be dismissed.

## II.    PROCEDURAL BACKGROUND

The indictment charges George Russell Isbell, Jr. with a violation of 18 U.S.C. §§ 875(c) and 876(c).

### Count One

Count One of the Indictment charges that on or about September 18, 2025, that the Defendant transmitted, in interstate commerce, a communication containing a threat to injure Victim 1 with the intent to communicate a true threat of violence and with recklessness as to whether the communication would be viewed as a true threat of violence, in violation of 18 U.S.C. § 875(c).

### Count Two

Count Two of the Indictment charges that on or about September 18, 2025, the Defendant deposited in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, and caused to be delivered by the United States Parcel Service according to the directions thereon, a communication addressed to Victim 1, which contained a threat to injury Victim 1, with the intent to communicate a true threat of violence, and with recklessness as to whether the communication would be viewed as a true threat of violence, in violation of 18 U.S.C. § 876(c).

Factual Basis

During the early fall of 2025, the Defendant, who disagreed with the political positions held by certain political pundits, media personalities, and elected office holders, wrote letters[1] to a variety of individuals, including members of the United States Congress, Charlie Kirk's widow[2], and Victim 1.

Specifically, to this case, on September 24, 2025, Victim 1, a media personality, received a threatening letter in the mail. The letter at issue was sent to Victim 1's business mailbox, located at a UPS Store in Tampa, Florida. Victim 1's wife retrieved the mail from this mailbox, took it to Victim 1's house, and opened the letter. Upon reading it, she contacted Tampa Police Department and reported the threat. An officer arrived on scene and collected the letter as evidence.

The letter was processed for fingerprints, and the FDLE found two fingerprints on the letter belonging to the Defendant. Investigators later learned that the letter had been processed on September 18, 2025, at a United States Post Office in San Diego, California. Investigators determined that the Defendant lived in San Diego, approximately twenty miles away from where the letter was

---

[1] According to the government's discovery, many of these letters were later found at his residence, unsent to their addressees.

[2] Charlie Kirk was an American political commentator and media personality. On September 10. 2025, Mr. Kirk was assassinated during a public engagement on a college campus in Orem, Utah.

processed, and approximately 2,500 miles away from Tampa, Florida, where Victim 1 resides.

On September 25, 2025, the Federal Bureau of Investigation (hereafter, FBI) in Tampa, Florida was notified of the threatening letter, which read as follows:

> *Why was I not surprised to see you wrap yourself in the flag. You are Charlie Kirk Jr. Sick of you white cis Christian whiners spewing hate while hiding under the veneer of legitimate debate. You and all your fellow WHITE MAGA podcasters are nothing but revolting white racists and pedophiles. Saw you have millions of racist subscribers. I must admit I did not realize how many of you shallow bigoted slugs exist in the US. You all need to be exterminated. Don't worry - won't be me - I'm not giving up my freedoms for worm shit like you. Please give my regards to Brendan Carr, a dazzling piece of Catholic shit and contributor to P25 you interviewed. Another prostrating Trump boot licker like yourself. Nothing I write here today is going to influence you, but it is not intended to. You are obviously a lost, disgruntled, petty, and pathetic waste of flesh with no value to the human race. The world has so much hate and pain thanks to people like you and Charlie Kirk. You are an EVIL man. Do you dream of hurting other humans when you're asleep beside during every waking moment? Here is hoping the American flag strangles the life out of you. My uncle drowned in the Rhine River to defeat fascists like you and I will not let his death be in vane (sic). The saddest part of your drivel is your contamination of naïve minds. <u>Maybe someone will blow your head off!!</u> We can hope! Planning any public engagements? Love to see your head explode and your blood stain the concrete red. What a sight!*

After reviewing and processing the above letter, the FBI interviewed Victim 1, who said that he regularly received threats but that after his friend, the late Mr. Kirk, was murdered, he takes them more seriously. Victim 1 stated that he planned

to move soon because his then residence was publicly available for anyone to search and find.

Based on the fingerprints linking to the Defendant, FBI agents traveled to San Diego, California to interview the Defendant. He admitted to having authored the letter, but he also stated he did not intend to harm Victim 1. The government noted in discovery that the Defendant spent time editing the above letter before sending it and an earlier draft of the letter was found at his residence that did not include the following sentence: "*Don't worry - won't be me - I'm not giving up my freedoms for worm shit like you.*" This evidence, along with his interview statement, is proof the Defendant was not personally threatening Victim 1.

## III.    MOTION TO DISMISS AN INDICTMENT - THE LEGAL STANDARD

Federal Rule of Criminal Procedure 12 permits pretrial dismissal of an indictment that fails to state an offense or charges (criminalizes) conduct protected by the United States Constitution. Fed. R. Crim. P. 12(b)(3)(B)(v); *United States v. Stevens*, 559 U.S. 460, 468 (2010).

In assessing such a motion, a district court initially must accept the indictment's factual allegations as true but then must determine whether the indictment's factual allegations state a criminal offense as a matter of law. An indictment must allege all elements of the offense, including all constitutionally

required elements. See *Counterman*, 143 S. Ct. at 2111–2112, 2115–2117 (clarifying constitutional mens rea for true threats).

IV.   THE LAW

### *Counterman* Requires the Government to Allege at Least Recklessness as to Whether the Communication Would Be Understood as a Threat

In *Counterman*, the Court held that the First Amendment requires proof of a culpable mental state for speech to qualify as an unprotected "true threat." 143 S. Ct. at 2111–2112. The Court rejected both a purely objective approach and a negligence standard, concluding that "the First Amendment requires that the State prove in true-threats cases that the defendant had some understanding of his statements' threatening character." *Id*. at 2111–2112.

The Court adopted recklessness as the floor. The government must show "that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." Id. at 2115–2117.

Thus, to comply with the First Amendment, a charge predicated on threatening speech must allege, and the government must prove, at least that a defendant was aware of and consciously disregarded a substantial risk that his words would be perceived as a threat. *Id*.

### The Indictment Fails to Allege the Constitutionally Required Mens Rea

The indictment here does not allege the Defendant acted with knowledge, intent, or at least recklessness as defined in *Counterman*. It contains no allegation

the Defendant was aware of a substantial risk that his communication would be understood as a threat, nor that he consciously disregarded that risk.

Instead, the indictment alleges only that the Defendant transmitted a written letter through the United States Mail containing a threat, which at most reflects an objective characterization of speech, not the subjective culpability *Counterman* requires. See *Counterman*, 143 S. Ct. at 2111–2112, 2115–2117.

An indictment that omits a constitutionally required element fails to state an offense and must be dismissed. Because *Counterman* makes clear that recklessness is an essential constitutional element in true-threats prosecutions, an indictment that does not allege that mental state is defective. *Id*. at 2115–2117. The government cannot cure this omission by reliance on an objective "reasonable person" standard or by arguing that the alleged statements were alarming in context. The First Amendment requires allegation and proof of the speaker's conscious disregard of a substantial risk of being understood as threatening. *I*d. at 2111–2112, 2115–2117.

## The Defect Is Not Harmless and Cannot Be Ignored

The omission is not a matter of form. The mens rea requirement protects core First Amendment values by guarding against the chilling of protected speech. *Counterman* emphasized that negligence-based or objective-only standards are "too uncertain" and risk suppressing protected expression; recklessness is the

minimum constitutional safeguard. *Counterman*, 143 S. Ct. at 2111–2112, 2115–2117.

Proceeding to trial on an indictment that fails to allege this essential element would permit conviction based on an unconstitutional standard. The proper remedy therefore is dismissal. Fed. R. Crim. P. 12(b)(3)(B)(v).

IV.    APPLICATION OF FACT TO LAW

**The First Amendment Strongly Protects Political and Ideological Speech**

The First Amendment protects speech that is offensive, disturbing, caustic, and even violent in imagery. *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). Political speech lies at the core of this protection. The Supreme Court of the United States has repeatedly emphasized that the government may not criminalize speech merely because it causes fear, offense, or emotional distress. *Watts*, 394 U.S. at 708; *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

**"True Threats" Are a Narrow and Carefully Limited Category**

A "true threat" is not defined by tone, hostility, or moral condemnation. It is limited to: "A serious expression conveying that the speaker means to commit an act of unlawful violence." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Statements of political anger, rhetorical wishes of harm, or symbolic violence do not suffice. *Watts*, 394 U.S. at 708.

### *Counterman v. Colorado* Sets a Constitutional Floor and a Ceiling

In *Counterman v. Colorado*, the Court clarified that both objective and subjective elements are constitutionally required in threat prosecutions:

- The communication must objectively constitute a true threat; and

- The defendant must have subjectively acted with at least recklessness - meaning a conscious disregard of a substantial risk that the statement would be viewed as a serious threat of violence. 143 S. Ct. at 2117.

Crucially, *Counterman* did not expand the true-threat category. It reaffirmed that recklessness cannot transform protected speech into a true threat where the speech itself does not objectively qualify.

### The Charged Letter Is Not a True Threat as a Matter of Law

Even accepting the Indictment's allegations as true, the letter at issue lacks every hallmark of a true threat, including:

- There is no intent to personally commit violence; and

- There is no imminence; and

- There is no plan or means to commit the act of violence; and

- There is no targeting beyond rhetorical condemnation; and

- There are explicit disclaimers of personal action.

Federal courts have routinely held that such speech is protected. See *Watts*, 394 U.S. at 708 (statement about shooting the President held protected hyperbole);

*Bagdasarian*, 652 F.3d at 1122 (violent political rhetoric not a true threat); and *United States v. White*, 670 F.3d 498, 508–09 (4th Cir. 2012).

In the *United States v. Franks* (USCA11 Case: 24-11546, September 2025), the Eleventh Circuit Court of Appeals addressed a case wherein similar charges were filed by the government. In *Franks*, the Eleventh Circuit ruled the district court did not err in denying Franks's motion for judgment of acquittal because a reasonable trier of fact could find Franks guilty of transmitting a threat through interstate commerce. In the *Franks* case, the defendant promised to shoot the victim and was arrested, charged, and convicted after a jury trial. He appealed. Relevant to our case, the Eleventh Circuit pointed to the following facts in denying Franks' appeal:

- Franks said he knew where the victim worked (which was true) and when (also true).

- Franks sent at least ten of these messages over a period of several hours, despite the victim's repeated requests to be left alone.

The case before this Honorable Court however is different. Unlike the letter in *Callahan* and the texts in *Franks*, the Defendant's lone letter did not specify "a date, time, and place" where the murder of Victim 1 would occur. Unlike *Franks*, the Defendant did not make repeated promises to murder the Victim 1. In the Defendant's case, the government has no evidence of travel plans from San Diego,

11

California to Tampa, Florida and no evidence of a plan on how the Defendant would commit the murder of Victim 1. To the contrary, in this instance, the Defendant specifically stated he would not commit the murder of Victim 1 and in an interview with law enforcement stated he did not intend to kill Victim 1.

### Recklessness Cannot Salvage an Otherwise Protected Expression

Although the Defendant's indictment recites the word "recklessness," constitutional analysis turns on facts, not labels. *Counterman*, 143 S. Ct. at 2116. A speaker cannot "consciously disregard" a risk that speech will be interpreted as a serious threat when:

- The speaker disclaims he will commit an act of violence; and

- The language is political and rhetorical; and

- No reasonable interpretation supports an intent to act.

Allowing prosecution in the Defendant's case would recreate the unconstitutional objective standard expressly rejected in *Counterman*.

### Allowing This Case to Proceed Would Chill Core Protected Speech

The Supreme Court of the United States has warned that prosecutions like the government's prosecution of the Defendant chill lawful expression by forcing speakers to "steer wide of the unlawful zone." *Counterman*, 143 S. Ct. at 2115. The First Amendment does not permit criminal prosecution for rhetoric, ideology, or political hostility - even when that speech is crude, disturbing, or deeply

12

unpopular. Political speakers must not be required to sanitize language to avoid felony prosecution.

## Relief Requested

The Defendant's indictment arises from a single letter mailed by the nearly seventy-year-old man who resides in and mailed the letter from San Diego, California, to an individual residing in Tampa, Florida. The letter contains morally repugnant, harsh political rhetoric, ideological condemnation, and hostile language directed toward Victim 1 and others associated with the recipient.

However, and this is important, the government does not allege that the Defendant:

- Traveled from San Diego, California to the recipient, who resides in Tampa, Florida or even left San Diego, California; or

- Communicated imminence, logistics, or a plan of attack; or

- Took any step toward committing an act of violence; or

- Expressed an intent to personally carry out violence.

To the contrary, the language of the letter includes statements expressly disavowing personal action, indicating that the Defendant would not himself engage in violence. The letter was not accompanied by any overt act, follow-up communication, surveillance, or attempt to contact the recipient beyond the single mailing alleged in the Indictment.

Because the Indictment fails to allege a constitutionally unprotected true threat under *Counterman v. Colorado*, this Honorable Court should dismiss the indictment with prejudice for failure to allege the First Amendment mens rea required by *Counterman v. Colorado*, 143 S. Ct. 2106 (2023).

## **CONCLUSION**

WHEREFORE, the Defendant, GEORGE RUSSELL ISBELL, JR, by and through the undersigned counsel respectfully requests this Honorable Court grant the stated relief and/or any other relief this Honorable Court deems appropriate, including a hearing with legal argument before denying this motion.

Respectfully submitted,

By: /s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210
511 West Bay Street
Suite 330
Tampa, Florida 33606
D:      (813) 228-6989
E:      mjo@markjobrien.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on February 20, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all counsel of record.

By: /s/ Mark J. O'Brien
Mark J. O'Brien, Esquire