UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                                          CASE NO. 8:25-cr-498-JLB-AEP

GEORGE RUSSELL ISBELL, JR.

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DIMISS INDICTMENT

The United States, through counsel, hereby respectfully submits the following response in opposition to the Defendant's Motion to Dismiss Indictment. The Defendant argues that the Indictment is legally insufficient because the Indictment fails to allege the *mens rea* requirement, the Defendant's threatening letter is protected by the First Amendment and fails to constitute a true threat criminalized by 18 U.S.C. § 875(c). For the reasons set forth in more detail below, this Court should deny the Motion because: (1) the Indictment explicitly alleges the *mens rea* requirement, (2) the remaining portions of the Defendant's motion are not cognizable as a motion to dismiss because the issues presented are properly decided by a Rule 29 motion or submitted to the jury, and (3) the threats charged in the Indictment are true threats, which are unprotected by the First Amendment.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On or about September 18, 2025, ISBELL took a threatening letter (*See* Doc. 1., page 5, 8:25-mj-03195-LSG) that he had drafted and redrafted and mailed it through the United States Mail to VICTIM 1's business address.

On or about September 24, 2025, VICTIM 1's wife opened the letter from ISBELL and contacted the Tampa Police Department (TPD). TPD worked with the Federal Bureau of Investigation, the United States Postal Inspection Service (USPIS) and the Florida Department of Law Enforcement (FDLE) to identify ISBELL through markings on the envelope and fingerprint analysis.

On October 3, 2025, a Complaint and Arrest Warrant were approved by a Magistrate Judge in the Middle District of Florida. Docs. 1 and 2, 8:25-mj-03195-LSG. ISBELL was arrested in San Diego, California on October 8, 2025. Doc. 7.

A search of ISBELL's residence, pursuant to a search warrant, was conducted on October 8, 2025. In his residence, law enforcement found an earlier version of the letter that had been mailed to VICTIM 1 as well as multiple other threatening and demeaning letters, notes, and documents. Many of these documents appeared ready to mail.

A detention hearing was held on October 10, 2025 before a Magistrate Judge in the Southern District of California. The Court ordered the defendant detained based on the danger to the community. Doc. 5.

On October 16, 2025, a grand jury in the Middle District of Florida returned an indictment charging ISBELL with one count of Interstate Communication of a Threat to Injure in violation of 18 U.S.C. § 875(c) and one count of Mailing Threatening Communications in violation of 18 U.S.C. § 876(c). Doc. 1.

On October 30, 2025, an Identity and Removal hearing was held before a Magistrate Judge in the Southern District of California. Doc. 5. The Court found

ISBELL to be the person listed in the arrest warrant and a Warrant of Removal was issued on November 6, 2025. Doc. 5.

On November 26, 2025, ISBELL was arraigned in the Middle District of Florida. Doc. 14. Trial in this case is set for the April trial term beginning April 6, 2026.

## II. Argument

### a. The Defendant's Claim that the *Mens Rea* Element has not been Alleged is False

Contrary to the assertions in the Defense Motion to Dismiss (Doc. 38), each count of the indictment in this case explicitly alleges the *mens rea* element of recklessness. Each count ends with the language, "and with recklessness as to whether the communication would be viewed as a true threat of violence." Doc. 1.

Although Section 875(c) requires that a communication is sent knowingly, it does not include a specific *mens rea* requirement as to whether a particular communication contains a true threat. However, in 2015, the United States Supreme Court granted certiorari in the case of *Elonis v. United States*, 575 U.S. 723 (2015), in order to take up that exact issue. In *Elonis*, the Court found that there must be a subjective mental state requirement that applies to the fact that the communication contains a true threat. *Id.* at 737. However, over the dissent of some Justices, the Court made clear that it was not deciding what level of subjective *mens rea* was sufficient and left that question for another day. *Id.* at 741.

In 2023, the United States Supreme Court revisited this question in *Counterman v. Colorado*, 600 U.S. 66 (2023).  In that case, the Court found that among the subjective *mens rea* standards, "recklessness offers the right path forward." *Id.* at 79. The Court also explained that "[i]n the threats context, [recklessness] means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Id*. at 79 (citing to *Elonis* at 746 (Alito, J., concurring in part and dissenting in part)).

In this case, the indictment contains a direct reference to this standard and is in no way insufficient.

### b. The Defendant's Further Claims Are Not Cognizable as a Motion to Dismiss

Defendant goes argues that his letter to VICTIM 1 is protected by the First Amendment and was mere hyperbolic political speech. True threats are not protected by the First Amendment. *United States v. Stevens*, 881 F.3d 1249, 1253 (10th Cir. 2018). Generally, in the pre-trial stage, the Court inquires whether a reasonable jury could conclude that the Defendant issued a true threat. *Id.*  "[I]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *United States v. Wheeler*, 776 F.3d 736, 742 (10th Cir. 2015); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) (whether a statement amounts to a true threat is a question for the fact finder).  However, "absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury." *Wheeler*, 776 F.3d at 742.

Here, a reasonable jury could conclude that the Defendant communicated a true threat of violence. At multiple points in the letter, the Defendant associates VICTIM 1 with Charlie Kirk, a political activist and media personality who had been assassinated during the same month as the Defendant sent his threat. The Defendant then ends his letter by writing,

> My uncle drowned in the Rhine River to defeat fascists like you and I will not let his death be in vane (sic).
> The saddest part of your drivel is your contamination of naïve minds. <u>Maybe someone will blow your head off!!!</u> We can hope! Planning any public engagements? Love to see your head explode and your blood stain the concrete red. What a sight!

A reasonable jury could conclude that the defendant was, at a minimum, reckless as to whether his statement would be viewed as a threat of violence. *Counterman,* 600 U.S. at 69 ("True threats of violence are outside the bounds of First Amendment protection and punishable as crimes. . . The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The State need not prove any more demanding form of subjective intent to threaten another.") In order to further show the Defendant's understanding that his communication would be viewed as threatening, the United States will also present evidence of a time that law enforcement contacted the Defendant about his prior harassing communication, sent to a Louisiana lawmaker.

This narrow approach to one's ability to dismiss an indictment pre-trial based on a First Amendment claim of political speech is consistent with our courts' long-standing recognition that the sufficiency of an indictment is determined from its face. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). To be valid, an indictment "must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *Id.; see also United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("The indictment is sufficient if it charges in the language of the statute."). It must also enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. *United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002). In considering a pretrial motion to dismiss, federal courts read indictments in the light most favorable to the United States and assume that all factual allegations are true. *Sharpe*, 438 F.3d at 1258-59.

At the pre-trial stage, a court's review of an indictment is "very limited." *United States v. Ferguson*, 142 F. Supp. 2d 1350, 1354 (S.D. Fla. 2000). The Court may dismiss an indictment that (1) contains a defect in the charging instrument, or (2) is based on a purely legal question, such as the constitutionality of a statute. *Id.* Any arguments or issues that require consideration of the facts underlying the prosecution are not the proper subject for a motion to dismiss. *Id.* Rather, an issue that depends upon the facts of a case is properly addressed through a motion for judgment of acquittal or submitted to the jury. *Salman*, 378 F.3d at 1268; *see also United States v. Brantley*, 461 F. App'x

6

849, 851 (11th Cir. 2012) (reversing dismissal of indictment where the district court predicted what the trial evidence would show).

Linguistic precision and literary elaboration are not required in an indictment. *United States v. deVegter*, 198 F.3d 1324, 1331 (11th Cir. 1999). "Instead, an indictment may be short and simple—its allegations are sufficient if they include all elements of the offense and briefly describe the facts of the commission of the offense." *Id*. (citing *United States v. Adkinson*, 135 F.3d 1363, 1375 n. 37 (11th Cir. 1998) ("An indictment need do little more than track the language of the statute charged to be sufficient.")).

The Indictment in the instant case is legally sufficient. It tracks the language in the statute, briefly describes the facts of the commission of the offense, and alleges the Defendant's "*mens rea* or facts from which the intent" of the Defendant's threat "can be inferred." *United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) ("Martinez II"). Indeed, each count ends with the same language – "and with recklessness as to whether the communication would be viewed as threatening violence."

The Defendant's motion requires the court to go beyond the four corners of the Indictment, which is impermissible in a Motion to Dismiss. In effect, the Defendant asks this Court to consider evidence that may be presented at trial—including the language of the Defendant's threatening letter and the language of an earlier draft of that letter—and to make a factual finding that the statements within that letter do not constitute "true threats." Because the existence of a "true threat" is a factual question, its proof or refutation requires a trial.

7

The Eleventh Circuit has not yet updated its pattern jury instruction to account for the Supreme Court's recognition of the subjective *mens rea* standard of recklessness. At least the United States, but likely both parties jointly, will request a tailored jury instruction to account for this new caselaw. However, even the Eleventh Circuit's current pattern jury instructions, which will need to be tailored after *Counterman*, confirm that the existence of a true threat is one of the elements of the offense, which a jury would have to find to convict the Defendant. *See* 11th Cir. Pattern Jury Instruction O30.3 (requiring that the message "contain[] a true threat" and defining that term to mean "a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear").

Whether the Government can or cannot prove that the Defendant's communication contained a true threat of violence is properly addressed in a Rule 29 motion, or decided by a jury, not a motion to dismiss. A factual dispute that requires consideration of the totality of the surrounding circumstances cannot be the basis for granting a motion to dismiss an indictment. As discussed below, when evaluated in their full context, the statements charged in this Indictment are true threats—not protected speech.

  c. **<u>Alternatively, the Defendant's Motion to Dismiss Fails on the Merits.</u>**

Defendant claims that the Indictment should be dismissed because his threat to kill VICTIM 1 is political speech. *See* Doc. 38.  A criminal threat cannot be shielded from prosecution even if it was made while engaged in otherwise lawful discourse.  A

criminal threat simply is not constitutionally protected speech. However, in this case, there was no political statement made within the Defendant's one-page threatening letter to VICTIM 1.

### i. Defendant's claim that he took no steps toward carrying out his threat does not insulate him from culpability.

The Defendant alleges that the Defendant never travelled from San Diego, California to Tampa, Florida, and that he did not have a plan or means to carry out a kinetic attack on VICTIM 1. The indictment makes no allegations to the contrary.

Threats are crimes in and of themselves, a defense that the defendant did not intend to carry out the threat is no defense at all. As the Seventh Circuit explained in *United States v. Dutcher*, "[a] true threat does not require that the speaker intend to carry it out, or even that she have the capacity to do so." *United States v. Dutcher*, 851 F.3d 757, 761 (7th Cir. 2017).

This argument would be better made to an indictment which charged a conspiracy or an attempt to injure or kill, in which overt acts may be required by the elements of the offense. The Defendant has only been charged with sending his threatening letter. He has not been charged with carrying out his threat, or with attempting to do so. *See id.* at 761 ("Dutcher is missing the point. He was charged with threatening the President under § 871(a), not with the separate crime of attempting to assassinate him under 18 U.S.C. § 1751.")

The United States Supreme Court made clear in *Counterman* that "[w]hen the statement is understood as a true threat, all the harms that have long made threats

unprotected naturally follow. True threats subject individuals to fear of violence and to the many kinds of disruption that fear engenders." *Counterman,* 600 U.S. at 74 (internal citations and quotation marks omitted).

> ii. **The Defendant's Threat to Kill VICTIM 1 is not Constitutionally Protected Political Speech.**

The First Amendment provides for the Freedom of Speech and states, in pertinent part, "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. AMEND. I. This prohibition precludes the government from prohibiting speech based on the content of a message. *See Regan v. Time, Inc.*, 468 U.S. 641, 648-49 (1984) ("Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment."); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

There are, however, a few exceptions to the First Amendment's general prohibition of Congress penalizing speech based on its content. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem."). Of relevance here, the First Amendment does not prevent the government from prohibiting and punishing speech that constitutes a true threat. *See United States v. Alvarez*, 567 U.S. 709, 717 (2012). The Supreme Court has understood the First Amendment to comport with society's need

to protect itself "from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur," which true threats cause. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992). Therefore, "a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707 (1969). Courts must distinguish mere "political hyperbole" from a true threat. *Id.* at 708. A "true threat" is "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

This exception is widely accepted, as pointed out by the Supreme Court in 2023, "True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman,* 600 U.S. at 72.

The Defendant's threatening letter did not include any statement of or advocacy for a particular political position with the possible exception of his stated perspective that VICTIM 1 is a "white cis Christian whiner" and a "WHITE MAGA podcaster," both of which are referenced disparagingly. *See* Doc. 1.

The Defendant is not advocating for the election of a political candidate, nor is he attempting to gain public support for a political issue. Even if there were some link between his true threat and a political viewpoint, a true threat motivated by political views is still a true threat.

A "direct statement of personal intent is not necessary for" a court "to find that a communication conveys a threat of injury ...." *United States v. Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015). In assessing whether a reasonable person would consider a

11

message to be a threat, courts must take into consideration connotations that add an additional layer of meaning to a message. *United States v. Turner*, 720 F.3d 411, 422 (2d Cir. 2013); *United States v. Shoulberg*, 895 F.2d 882, 886 (2d Cir. 1990) (upholding a threat conviction against a First Amendment challenge due to an implied use of violence and overtones of an imminent threat).

Courts also consider the reaction of the recipient when assessing whether a communication entails a true threat. *See Watts*, 394 U.S. at 708 (noting that the Court considered the "reaction of the listeners" in its analysis). When the government is a recipient of the alleged threat, although not dispositive, a court may consider the rapidity with which the government responds to a threat. *United States v. Hoffman*, 806 F.2d 703, 712 (7th Cir. 1986) (noting that the immediate response of the government was "clear evidence" of the government's perception of the seriousness of the defendant's expressed intent to carry out his threat).

The Eleventh Circuit Pattern Jury Instructions from 2016 require that for the United States to prove that a defendant made a true threat, the government must prove beyond a reasonable doubt that the defendant:

1. knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and

2. sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

(11th Cir. Pattern Jury Instruction O30.3).

A "true threat" is a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would lead a reasonable person to believe that the Defendant intended to injure another person. *Id.*

However, in June of 2023, in the *Counterman* case, the Supreme Court clarified that the proper *mens rea* standard in true threats cases is recklessness, not the much higher standard of knowledge. *Id.* at 69 ("True threats of violence are outside the bounds of First Amendment protection and punishable as crimes. . . The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The State need not prove any more demanding form of subjective intent to threaten another.")

In *United States v. Baker*, 514 F. Supp. 3d 1369 (N.D. Fla. 2021), the District Court in the Northern District of Florida stated that the comingling of threats with political speech does not shield a defendant from culpability under the statute criminalizing interstate communications of a threat. *Id.* at 1381. Under the First Amendment, amalgamating true threats with political commentary does not immunize the former. *Id.*

In *Baker*, the defendant made numerous online statements relative to a political event he created on Facebook on January 12, 2021, entitled "Defend Tallahassee."

The court held that a reasonable person could understand these statements to be serious expressions of an intent to commit acts of unlawful violence. *Id.* at 1378-82.

The *Baker* Court also recognized that the FBI perceived the defendant's messages to constitute a real threat of violence and sought a warrant to arrest the Defendant. Although the government's understanding of a message cannot be a court's sole basis for concluding that a message constitutes a threat—that would be an abdication of the court's duty to determine probable cause independent of the executive branch—it is one relevant factor in the probable cause analysis. *Id.* at 1380-81.

The Court also rejected Baker's claim that his statements constituted hyperbolic speech protected by the First Amendment. "To the extent that the Defendant argues that the political nature of his speech insulates his threats from prosecution, even when a threat accompanies pure political speech, this comingling of threats with political speech 'does not shield a defendant from culpability.'" *Baker*, 514 F. Supp. 3d at 1381, citing to *United States v. Viefhaus*, 168 F.3d 392, 396 (10th Cir. 1999); *United States v. Callahan*, 702 F.2d 964, 966 (11th Cir. 1983). The Court further explained that, "[a]lthough there are political overtones to Defendant's messages, he explicitly included true threats within his diatribe. That is sufficient to bring the Defendant's messages within the zone of threatening that Congress lawfully may prohibit and punish." *Id.*

The communication in this case was much more direct. Rather than posting threatening speech online, the Defendant sent a letter directly to VICTIM 1. While

online comments can sometimes be properly categorized as bravado or as an attempt to show the degree of one's political affiliation by demonstrating the ardent nature of one's views, they still may be true threats. However, this case is different. Here the only audience was VICTIM 1 or those authorized to open his mail. This message was a threat, plain and simple. The Defendant wanted VICTIM 1 to fear for his safety. There is no other rationale for the Defendant to have sent it.

iii. **Defendant's Threat is More than Political Hyperbole.**

This case is easily distinguishable from *Watts v. United States*, 394 U.S. 705 (1969), cited by the Defense. In that case, Watts' statement, made at a political rally, that ". . . If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. . ." was properly considered protected political speech based not only on the context in which it was given (a political rally), and the stated conditionality of the statement, but also because of the reaction of the listeners. *Id.* at 708 ("We agree with petitioner that his only offense here was 'a kind of very crude offensive method of stating a political opposition to the President.' Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.") Unlike the statement made by Watts, the communication in this case was an anonymous letter addressed and sent directly to VICTIM 1. The letter cannot possibly be read to simply advocate for a particular political position and VICTIM 1 is not a politician. Courts have consistently followed the Supreme Courts lead from the *Watts* case and other cases, and considered the reaction of the recipients and law enforcement when determining whether a

communication constitutes a true threat.[1] In this case, VICTIM 1's wife, the first person to read the letter, notified her security and law enforcement. Law enforcement, in turn, involved multiple agencies, investigated the threat, filed a complaint in Federal Court, and arrested the Defendant.

VICTIM 1, his family, and law enforcement are not required, or expected, to wait to speak with the Defendant to find out if he intends to carry out his threat before they take it seriously.

      iv. **The Defendant's attempts to shroud his language does not shield him from culpability.**

The Defendant points to one section of the threatening letter in which he claims to distance himself from the harm that he is threatening. That section states, "I must admit I did not realize how many of you shallow bigoted slugs exist in the US. You all need to be exterminated. Don't worry-won't be me–I'm not giving up my freedoms for worm shit like you."

However, attempts such as this and similar tactics that other defendants have attempted in the past do nothing to shield them from culpability. For example, in *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013), the Court derided an argument

---

[1] *See United States v. Castillo*, 564 F. App'x 500 (11th Cir. 2014) (in a prosecution under 18 U.S.C. § 871, noting that people interpreted the defendant's Facebook post as a legitimate threat to the President, thus causing one Facebook user to report the threat to the Secret Service); *United States v. Pinkston*, 338 F. App'x 801 (11th Cir. 2009) (reaction of recipients and law enforcement is considered in evaluation of whether the threats were made under circumstances that a reasonable person would construe it as a serious expression of an intention to inflict bodily harm upon or take the life of the President).

that "relies overmuch on the literal denotation and syntax of Turner's statements, refusing to acknowledge that threats—which may be prohibited, consistent with the First Amendment—need be neither explicit nor conveyed with the grammatical precision of an Oxford don." *Id.* at 425.

Similarly, in *United States v. Stevens*, 881 F.3d 1249 (10th Cir. 2018), the Court reminded the litigants that it has "warned against rigid adherence to the literal meaning of a communication without regard to its reasonable connotations[.] . . . For example, [a] defendant cannot escape potential liability simply by using the passive voice or couching a threat in terms of 'someone' committing an act of violence…" *Id.* at 1253-54 (internal quotation marks and citations omitted). The *Wheeler* Court explained that "[e]xhorting groups of followers to kill specific individuals can produce fear in a recipient no less than more traditional forms of threats. Allowing defendants to seek refuge in the First Amendment simply by phrasing threats as exhortations would, as the *Turner* court observed, leave the state 'powerless against the ingenuity of threateners.' We cannot endorse so wooden an interpretation of the term "threat." *Wheeler*, 776 F.3d at 745 (internal citation omitted).

III.   **Conclusion**

For the reasons set forth above, this Court should deny the Defendant's Motion to Dismiss.

                                            Respectfully Submitted,

                                            GREGORY W. KEHOE
                                            UNITED STATES ATTORNEY

By:   *s/Joseph H. Wheeler III*
      Joseph H. Wheeler III
      Special Assistant U.S. Attorney
      Florida Bar No. 87451
      400 N. Tampa Street, Suite 3200
      Tampa, Florida 33602
      Tel: (813) 274-6152
      Joseph.Wheeler2@usdoj.gov